CITY OF ST. LOUIS, Appellant, v. TERMINAL RAILROAD ASSOCIATION et al.

In Banc, April 2, 1908.

1. **CITY CHARTER: Appropriations.** Section 28 of article 6 of the charter of St. Louis, providing that every ordinance requiring a public work to be done "shall contain a specific appropriation from the public revenue and fund, based upon an estimate of cost to be endorsed by the president of the Board of Public Improvements, on said ordinance, for the whole of the cost of each street, part of street or other object respectively," refers only to work to be paid for out of the city treasury, and not to that part of the cost of a bridge which private corporations have by contract agreed to pay.

*Held*, by GRAVES, J., in separate opinion, that, under said section, and under section 12 of article 6 of the city charter, which requires that all ordinances contemplating the payment of money shall have the indorsement of the Comptroller thereon "to the effect that sufficient unappropriated means stand to the credit of the fund therein named to meet the requirements of said ordinance," the city must appropriate funds, not a mere debt from defendants, due or to become due; and that the certificate of the Comptroller that $1,000 stands to the credit of the fund, to pay for the construction of a bridge to cost $151,000, of which amount the city by the ordinance agreed to pay $1,000, and appropriated $150,000 when paid by defendants, is not a compliance with the law, but the ordinance itself is void.

2. **BRIDGE OVER STREET: Over Railroad Tracks at Union Station: Liability of Private Corporations to Pay For: Duty of City to First Make Appropriation For Entire Cost.** The city vacated a part of Clark avenue, to be used by defendants for Union Station and railroad tracks, who agreed that "should the city of St. Louis at any time provide by ordinance for the building of a bridge over Clark avenue between Eighteenth street and Twentieth street, the said Union Depot Company and Terminal Railroad Association shall pay into the city treasury as part payment of the construction of said bridge the sum of one hundred and fifty thousand dollars." The city by ordinance authorized the construction of said bridge to cost $151,-000, and provided that $1,000 of the cost was to be paid with money appropriated out of the general revenue, and $150,000 was to be collected from defendants and applied to the pur-

pose. *Held*, that the city is not required, before it can call upon defendants for the money, to first appropriate $151,000 out of its municipal revenue and use that in the construction of the bridge. Besides, if formal appropriation for the $150,000 which defendants are called upon to pay were necessary, the ordinance complies with that requirement as far as it is possible to do so, by declaring that when defendants pay the money into the city treasury it shall be set aside and used for that purpose alone.

*Held*, by **GRAVES, J.**, that there is no liability upon the part of defendants until the city has in proper manner become obligated for the bridge, and the ordinance passed by the city does not show an obligation to build the bridge.

3. ———: ———: ———: **The Time to Pay.** The time, under said contract, when defendants are required to pay the $150,000, is when the ordinance providing for the construction of the bridge is passed, and not when the work is completed.

*Held*, by **GRAVES, J.**, that the ordinance does not authorize contracts covering the proposed improvements, and that until the city, under a valid ordinance, has entered into contracts for the erection of the bridge in all its parts, there is no liability upon defendants to pay.

4. ———: ———: ———: ———: **Misapplication of Fund.** Defendants cannot withhold payment on a suspicion that the city would not build the bridge, if they paid the money. If the city were to attempt to misuse the money, defendants would have a remedy to prevent or to right the wrong.

5. ———: ———: ———: **Approaches.** Under said contract, and the city's general control over its streets, the city has the right to construct the approaches to the bridge in Eighteenth and Twentieth streets. Approaches to a bridge are for some purposes to be considered a part of the bridge, but they are different structures, nevertheless, and in determining where, under this contract, which said nothing about approaches, they are to be located, they are considered different structures from the bridge, and the city, having control over its streets, has the right to say where it will locate them.

*Held*, by **GRAVES, J.**, that the plan of the bridge contemplated the approaches as a part of the bridge, and as a matter of law are a part of the bridge, and as the ordinance for the construction of the bridge called for a bridge to be constructed over three streets, namely, Eighteeenth and Twentieth streets and Clark avenue, whereas the original contract was for a bridge over Clark avenue only, the city has not so complied with the contract as to entitle it to demand payment of the $150,000 from defendant for the construction thereof.

6. ——: ——: ——: ——: **Damages To Abutting Property.**
Defendant railroad companies contend that in the present
condition of Eighteenth street the city cannot there build
an approach to the bridge over Clark avenue, because that
street is only sixty feet wide, while the approach designated
by the ordinance is to be fifty-four feet wide, and as there
is already a double-track street railway in Eighteenth street
the approach would impair or destroy the street for the uses
to which it is at present devoted, and would damage the ad-
jacent property, which the city would have no right to do
until the damages are ascertained and paid. The contract
between defendants and the city in pursuance to which Clark
avenue between Eighteenth and Twentieth streets was va-
cated for defendants' use, provided that the bridge should
be so constructed as "not to interfere with the operation
of trains." Defendants have no interest in the street rail-
way, nor in the abutting property, nor in Eighteenth street
beyond that of the general public. *Held*, that if the right
of the abutting property-owner in the street is impaired he
can call the city to account for the injury, but that is a
question between him and the city, and one with which de-
fendants have nothing to do; and likewise defendants have
nothing to do with any interference with the street railways
now on the street, that being also a matter between the city
and the street railway company. And as it does not appear
that the location of the bridge approach, as designed, would
damage defendants' property or interfere with their use of
it, the contention is no defense to the city's demand that de-
fendants' pay the $150,000 they agreed to pay towards the
construction of the bridge.

7. ——: ——: ——: **Extent of City's Control over Streets:
Character and Kind.** The city is the judge of the best shape in
which to put a street in order to promote the public conven-
ience. While it has no right to convert a public street into
a private way, or give any one a right to use it in a manner
to exclude anyone else, it has the right to change the form
and proportions of the street, and devote it to public travel
in a manner different from that in which it has before been
used—for instance, to construct therein an approach to a
bridge over railroad tracks—being answerable all the time for
damages caused or threatened to adjoining property.

8. ——: ——: ——: **Alteration of Plans.** But before the de-
fendant railroad companies can be required to pay the $150,000
into the city treasury for the construction of the bridge they
have the right to know, not with absolute certainty as to de-
tails, but with reasonable certainty as to general form, the
character of the bridge and its approaches. Where the or-

dinance providing for the construction of the bridge contemplated a street one hundred feet wide in which the approaches are to be built, and soon after it was passed another ordinance which provided for the widening of the street from sixty to one hundred feet wide was repealed, that was such alteration in the plan as to amount to a temporary abandonment of the plan contemplated by the ordinance, and until the city by ordinance fixes upon a definite plan it cannot compel the defendants to pay.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) As between public and private interests the construction of ordinances or charter provisions will be taken most strongly in favor of the public. Stein v. Bienville, 141 U. S. 67; Philadelphia v. W. U. Tel. Co., 11 Phila. 327; McQuillin on Municipal Ordinances, sec. 578; Coosaw v. So. Car., 144 U. S. 562; Louisville Trust Co. v. Cincinnati, 73 Fed. 726. (a) No mere omission will justify judicial addition to the language of ordinance or contract. United States v. Goldenberg, 168 U. S. 95. (b) The legislative intention must be derived from the words used and not from conjectures *aliunde.* Gardner v. Collins, 2 Peters 86; Cargo v. U. S., 7 Cranch 60; Market Co. v. Hoffman, 101 U. S. 116; Petri v. Ban, 142 U. S. 650; McBroom v. Investment Co., 153 U. S. 323. (c) In this regard, as on all the special defenses, the burden was upon the defendants. Silver v. Railroad, 101 Mo. 79. (2) When provision was made for the building of a bridge over Clark avenue by the passage of ordinance 18834, the liability of the defendants was fixed. Ordinance 15989, sec. 7; Ordinance 18834, sec. 1. (a) The provision for the payment of $15,000 for each of any other

bridges which might subsequently be constructed by
the city across the tracks is not to be confused with
this provision for the payment of $150,000, for as to
such other bridges payments are ''to be made within
thirty days after the construction of said bridge or
bridges is commenced.''   (b)   Nevertheless, the city
proceeded as though this provision for the commence-
ment of construction applied to the Clark avenue
bridge as well as to the other bridges, and let a con-
tract for a portion of the work; and that work pro-
ceeded until the defendants themselves stopped it by
refusing the city and the contractor admission to the
Station grounds, contrary to their express agreement
in ordinance 15989, section 7.   (3)   The contention
that the provisions of ordinance 18834 are not specific
and definite is not well founded.   They direct the board
to cause a bridge to be built ''in accordance with plans
adopted by said board;'' prescribe the extent and ma-
terials of the work; appropriate $1,000 toward its
prosecution; and, the estimated cost being $151,000,
direct the auditor to credit the bridge fund with the
remaining $150,000, when the defendants shall have
complied with the agreement contained in ordinance
15989. Such an ordinance need not contain specifica-
tions of the work to be done.   Becker v. Washington,
94 Mo. 375; Roth v. Hax, 68 Mo. App. 287; Asphalt
Co. v. Ullman, 137 Mo. 570.   (4)   Ordinance 18834 was
not passed, nor was the bill even introduced in the
Municipal Assembly, until after the plan for the bridge
had been adopted by the Board of Public Improve-
ments.   Compare also date of plan, December 16, 1896,
with date of ordinance, March 11, 1897.   (5)   The
special defenses that the city had never widened the
streets, nor acquired private property nor paid dam-
ages to abutting property-owners, were immaterial. (a)
Such questions can be raised only by the owners of
private property.   (b)   Defendants cannot place them-

selves in the shoes of the owners of private property which might be affected by the building of the approaches to the bridge. (c) Nor can defendants set up the right of property-owners as against the city, as a defense to their liability to the city. (6) The law does not permit a person not interested in property abutting on a proposed public work, or who has waived compensation for damages, to block the work because some one else may be damaged. (a) *A fortiori,* possible damage to third parties constitutes no defense to an action upon an independent and distinct obligation in no way connected with property which may be damaged. (b) Such third parties are not parties to such action. *Non constat,* but that some or all of them may desire the public work to go on, regardless of the question of damages to them. (7) The court erred in holding, as a matter of law, that a bridge with approaches on Eighteenth and Twentieth streets was not a bridge on Clark avenue, as provided by Ordinance 15989. (a) So far as the language of that ordinance goes, a bridge on Clark avenue may have approaches anywhere to suit the public convenience; and it is the Municipal Assembly, and not the defendants, who are charged with the duty of determining what is for the public convenience. (c) It is immaterial where the approaches might be. (d) It is a question for the public interest only where the approaches should be. (e) It is not for defendants to dictate where the city should put the approaches to one of its bridges. (f) The ordinance did not limit the place where the approaches should be; thus wisely leaving it to the future discretion of the Municipal Assembly, when local conditions might be different. (g) Defendants cannot read a new clause into the ordinance, prescribing where the approaches should be. (h) It might be that the Municipal Assembly should desire to connect the Clark avenue

bridge with other bridges or structures already exist-
ing, for example, the Eighteenth street bridge, and new
approaches at such points might, therefore, be unneces-
sary. (i) It is erroneous to hold that an approach is
part of a bridge, as a matter of law. Whether the
word "bridge" includes approaches must depend upon
the intention with which, in view of all the circum-
stances, the word is used. Nims v. Boone Co., 66 Iowa
272; N. H., etc., Counties v. Milford, 64 Conn. 568;
Railroad v. Daniels, 90 Ga. 608; Com. v. Deerfield, 6
Allen (Mass.) 449; Swanzey v. Somerset, 132 Mass.
312. (j) Whether an approach is a part of a bridge
is a question for the jury. Moreland v. Mitchell Co.,
40 Iowa 392; Newcomb v. Co., 79 Iowa 487; Tolland
v. Wilmington, 26 Conn. 578; Weeks v. Lyndon, 54 Vt.
638. (8) The question of fact whether the bridge would
have interfered with the running of trains should have
been submitted to the jury. (a) The language of sec-
tion 7, of Ordinance 15989, refers to the physical opera-
tion of the trains, and not to the operation of a mere
system of signals. The words mean that the bridge
must be high enough to permit trains to pass under-
neath, and so as not to strike the supports of the bridge.
(b) The question whether the view of trainmen under
the train-shed would be obstructed by the proposed
bridge and whether trains under the shed could, after
the construction of such a bridge, be seen by the oper-
ator in the switch tower nearly a thousand feet south,
were both immaterial; but even on these questions the
evidence was conflicting. The court erred in admitting
it at all, but when once admitted the whole question
of fact should have been submitted to the jury. (9)
A void or unauthorized act of a municipal board or
official does not bind the municipality, and no estoppel
can arise therefrom. Moses v. St. Louis Sectional
Dock Co., 84 Mo. 242; Sturgeon v. Hampton, 88 Mo.
203; Heidelberg v. St. Francois Co., 100 Mo. 69; St.

Louis v. Gorman, 29 Mo. 593; Rissing v. Ft. Wayne, 137 Ind. 427; Galesburg v. Galesburg Water Co., 34 Fed. 675. (a) The Board of Public Improvements did not approve the plans of the station. But assuming that they did, their act in so doing was unauthorized; and no estoppel is raised thereby. (b) Where power or authority never existed, it cannot be retroactively created by an estoppel. Bigelow (5 Ed.), pp. 466, 467; also p. 349; Scoville v. Thayer, 105 U. S. 143; Winters v. Armstrong, 37 Fed. 508; Unionville v. Martin, 95 Mo. App. 39; State v. Murphy, 134 Mo. 567. (10) The record in the case of Lester Real Estate Company v. St. Louis should not have been admitted in evidence: (a) No estoppel was pleaded. (b) No estoppel can arise, nor can the subject-matter be res adjudicata, the two suits not being between the same parties. Authorities cited under point 9, supra. See, also: 1 Freeman on Judgments (4 Ed.), sec. 158, p. 289; McMahan v. Geiger, 73 Mo. 149; Bank v. Bartle, 114 Mo. 281; Chand. on Res Adjudicata, sec. 77; Van Fleet's Former Adjud., sec. 256, p. 572.

*McKeighan & Watts* and *J. P. McBaine* for respondents.

(1) The money sued for was to be paid by the defendants only upon the city's legally providing for the bridge mentioned in section 7 of Ordinance 15989. The city can only undertake to perform public work, like building a bridge, by an ordinance duly enacted strictly in conformity with the terms and provisions of its charter. Charter, art. 6, sec. 27; 1 Dillon on Municipal Corporations (4 Ed.), secs. 457-458; Rumsey Mfg. Co. v. Schnell City, 21 Mo. App. 173; Savage v. Springfield, 83 Mo. App. 323; 1 Abbott on Municipal Corporations, secs. 248, 253, 258; Defiance Water Co. v. Defiance, 90 Fed. 753; Somerset v. Smith, 49 S. W. 450; Wellston v. Morgan, 59 Ohio St. 147; 20 Am. and

Eng. Ency. Law (2 Ed.), 1162, 1163, 1164; Los Angeles Gas Co. v. Taberman, 61 Cal. 199; Sullivan v. Leadville, 11 Colo. 483; Hudson v. Marietta, 64 Ga. 286; Butler v. Charleston, 7 Gray (Mass.) 12; Niles Waterworks Co. v. Niles, 59 Mich. 311; Keeney v. Jersey City, 47 N. J. Law 449; McDonald v. New York, 68 N. Y. 23; City of Bryan v. Page, 51 Tex. 532; Lee v. Racine, 64 Wis. 231; Pollock v. San Diego, 118 Cal. 593; Holmes v. Arondale, 11 Ohio Cir. Ct. 430; Findley v. Pendelton, 62 Ohio St. 80; Crutchfield v. Warrensburg, 30 Mo. App. 456; Keating v. City of Kansas, 84 Mo. 415; Zaltman v. San Francisco, 20 Cal. 96; City of Unionville v. Martin, 95 Mo. App. 28; State v. Butler, 178 Mo. 272; Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188; Town of Kirkwood v. Meramec Highlands Co., 94 Mo. App. 637; Gamewell Fire Alarm Tel. Co. v. City of La Porte, 102 Fed. 417; Ingersoll on Public Corporations, p. 304; 1 Beach on Public Corporations, sec. 252, also 692 and 697; 1 Abbott on Mun. Corp., sec. 260. (2) 'Ordinance No. 18834, providing for the bridge, is void and of no force and effect, because it did not contain the indorsement of the comptroller that sufficient unappropriated means stood to the credit of the fund named in the ordinance, as required by the charter, article 5, section 12. Nor was it referred to a committee of the Municipal Assembly for obtaining said indorsement, and there did not stand to the proper fund sufficient unappropriated means, as required by said article and section of the city charter. (a) All contracts based upon city ordinances, which require that appropriations be first made before the city officers shall have any power to bind the city, are void if no appropriation is first made. Mister v. City of Kansas, 18 Mo. App. 217; Wolcott v. Lawrence County, 26 Mo. 272; Lester Real Estate Co. v. St. Louis, 169 Mo. 227; Wheeler v. Poplar Bluff, 149 Mo. 36. (b) All city charter requirements which

require ordinances for the payment of money to be first referred to certain fiscal officers and to be indorsed to the effect that sufficient means stand to the credit of the fund named are mandatory, and all ordinances passed not in conformity therewith are void. Sec. 12, art. 5, charter; McQuillin's Municipal Ordinances, sec. 148, p. 235, also sec. 136, p. 218; Lester Real Estate Co. v. St. Louis, 169 Mo. 227; Kinealy v. Bay, 7 Mo. App. 203; Kean v. Klausman, 21 Mo. App. 485; State v. Belt, 161 Mo. 371; DeSoto ex rel. v. Showman, 100 Mo. App. 323; Trenton v. Coyle, 107 Mo. 193; Saxton v. St. Joseph, 60 Mo. 153; Stewart v. Clinton, 79 Mo. 603; State v. Barlow, 48 Mo. 17; State v. St. Louis, 56 Mo. 277; Perkinson v. Partridge, 3 Mo. App. 60; Gilmore v. Milwaukee, 61 Wis. 588; Dallas v. Akins, 32 S. W. 780; Dallas v. Allison, 30 S. W. 1178; City of Superior v. Norton, 63 Fed. 357; Continental Co. v. City of Altoona, 92 Fed. 822; Johnston v. Philadelphia, 113 Fed. 40; City of Erie v. Moody, 176 Pa. St. 478; Lee v. City of Racine, 64 Wis. 231; Comstock v. Village of Nelsonville, 56 N. E. 15. (3) Ordinance 18834 is invalid because it attempts to appropriate $151,000 for the construction of this bridge when the ordinance, on its face, shows that the above sum did not stand to the fund named, and could not stand to the said fund until paid to the city by the defendants. 2 Abbott on Mun. Corp., sec. 415; section 10, art. 5, charter; 20 Am. and Eng. Ency. Law (2 Ed.), 1173; Mister v. Kansas City, 18 Mo. App. 217; Johnson v. School District, 67 Mo. 319; Cheeney v. Brookfield, 60 Mo. 53; Wolcott v. Lawrence County, 26 Mo. 272; Lamar Waterworks & Electric Light Co. v. City of Lamar, 128 Mo. 188, 140 Mo. 145; Lester Real Estate Co. v. St. Louis, 169 Mo. 277; 1 Dillon on Mun. Corp. (4 Ed.), sec. 130. (4) Ordinance 18834, on its face, shows that it was not passed in good faith and with the intention to construct the bridge as provided in

section 7 of Ordinance 15989. 1 Dillon on Mun. Corp. (4 Ed.), secs. 311, 312; Champlin v. N. Y., 3 Paige (N. Y.) 573; State v. Cincinnati Gas L. & Coke Co., 18 Ohio St. 262; Weston v. Syracuse, 158 N. Y. 274; Skinker v. Heman, 148 Mo. 349; Glasgow v. St. Louis, 107 Mo. 198; Knapp-Stout Lumber Co. v. St. Louis, 153 Mo. 560; In re Twenty-first Street, 96 S. W. 201. (5) Under the terms of Ordinance 18834 and the plans of the Board of Public Improvements, the plaintiff did not provide for or intend to build a bridge over Clark avenue, between Eighteenth and Twentieth streets, but only provided for and planned a bridge beginning at a point in Eighteenth street, a short distance south of Market street, extending down Eighteenth street three blocks to Clark avenue, then at right angles to Eighteenth street and over Clark avenue to Twentieth street, and then at right angles to Clark avenue northwardly on Twentieth street to a point on Twentieth street south of Market street. Such a bridge is not contemplated or provided for by section 7 of Ordinance 15989, and the defendant did not agree to pay any sum of money whatever for such a bridge. This is not a bridge over Clark avenue. The approaches of such a bridge as is planned by the city, extending some 660 feet north of Clark avenue on Twentieth street and some 400 feet north into Eighteenth street, form part of the bridge. 4 Am. and Eng. Ency. Law (2 Ed.), 941; Rex v. West Riding, 7 East 588; Driftwood, etc., v. Bartholomew County, 72 Ind. 236; Rush County v. Rushville, 87 Ind. 502; Penn., etc., v. Perry County, 78 Pa. St. 457; Titcomb v. Railroad, 12 Allen 254; Augusta v. Hudson, 94 Ga. 135; Shelby County v. Deprez, 87 Ind. 509; Albee v. Floyd County, 46 Iowa 177; Moreland v. Mitchell County, 40 Iowa 394; Miller v. Boone County, 63 N. W. 352; Fletcher v. Louisville, 138 Mass. 454; Chosen Freeholders v. Strader, 18 N. J. L. 108; Chosen Freeholders v. Hough, 55 N. J. L. 643; Westfield v.

Trage, 15 Pa. St. 152; Tinkham v. Stockbridge, 64 Vt. 480; Watson v. Lisbon Bridge, 14 Me. 201; The Clinton Bridge, 10 Wall. 454; Railroad v. Daniels, 90 Ga. 608. (6) Eighteenth street, between Market street and Clark avenue and that portion thereof on which the city, under ordinance and plans, intends to build a portion of the bridge, is now, and was at the time of the passage of the ordinance, occupied by two car tracks, authorized by prior ordinances, and the said companies so operating them have a perpetual right to maintain and operate those tracks in the present location and condition. So also Twentieth street, between Market street and Clark avenue, where a part of the bridge is to be erected under the ordinance and plans above mentioned is, and was, occupied by one car track authorized by ordinance giving the authorized company the right to perpetually maintain and operate the same. It is physically impossible to build the bridge as planned without destroying the right to operate and maintain the car tracks aforesaid. The city, therefore, cannot legally use Eighteenth and Twentieth streets as proposed and planned. Such action would be unconstitutional and would impair the obligations of contracts with the companies now using these streets. 15 Am. and Eng. Ency. Law (2 Ed.), 1049; St. Louis v. Western Union Tel. Co., 148 U. S. 92; Railroad v. Railroad, 166 U. S. 557; Detroit v. Railroad, 184 U. S. 368; Railroad v. Adams, 180 U. S. 28; State ex rel. v. Laclede Gas Light Co., 170 U. S. 78; Walla Walla v. Waterworks Co., 172 U. S. 1; Southwest Mo. Light Co. v. Joplin, 101 Fed. 23; Hovelman v. Railroad, 79 Mo. 632; State ex rel. v. Railroad, 85 Mo. 263; Railroad v. Springfield, 85 Mo. 674; Kansas City v. Corrigan, 86 Mo. 67; State ex rel. v. Laclede Gas Light Co., 130 Mo. 10; Westport v. Mulholland, 159 Mo. 87; State ex rel. v. National Subway Co., 145 Mo. 551; see, also, 50 L. R. A. 142 to 152, an elaborate note

on "Privilege of using streets as a contract within the constitutional provisions against impairing the obligations of contracts." (7) A bridge as planned and proposed under the ordinance 18834 by the city cannot be built for the further reason that the city at the time of this suit, and now has, made no provisions to vacate or widen Eighteenth and Twentieth streets. Unless these streets are widened the bridge, if built, will substantially occupy these streets, which will amount to vacating the streets. The city cannot widen or vacate these streets without first passing ordinances to accomplish that purpose, and instituting proceedings for the ascertainment of damages to the property and the property-holders and upon the report of the commissioners, should the same be adopted, to pass a further ordinance making provision for the payment of the damages so assessed. The city passed an ordinance widening Eighteenth street on March 29, 1895, and instituted proceedings for the ascertainment of damages to the property-holders. Thereafter, on April 6, 1899, this ordinance was repealed, and on April 19, 1899, the city dismissed its condemnation proceedings. This is all that has been done to widen or vacate Eighteenth and Twentieth streets, which is necessary and a condition precedent to the erection of the bridge as planned and proposed. Charter, art. 3, sec. 26; art. 6, secs. 2 to 13. (a) A street cannot be vacated without an ordinance for that purpose. Knapp-Stout Lumber Co. v. St. Louis, 153 Mo. 560; Glasgow v. St. Louis, 107 Mo. 204; Heinrich v. St. Louis, 125 Mo. 424. (b) A street cannot be widened without an ordinance for that purpose, ascertainment of damages by commissioners and payment of damages by an ordinance for that purpose. Charter, art. 6, secs. 2 to 13, inclusive; St. Louis v. Gleason, 89 Mo. 67, 93 Mo. 33; Sieferer v. St. Louis, 141 Mo. 586; St. Louis v. Ranken, 96 Mo. 497; Leonard v. Sparks, 63 Mo. App. 385; Buddecke

v. Ziegenheim, 122 Mo. 239; Kansas City v. Mastin, 169 Mo. 80; 2 Dillon on Mun. Corp. (4 Ed.), secs. 604, 605. (8) The city has not performed the necessary conditions precedent to the erection of the western portion of the bridge on Clark avenue at Twentieth street. To construct the western approach of the bridge on Clark avenue at Twentieth street it will be necessary to condemn private property, assess the damages and pay for the same. These things have not been done, and done in the manner and form set forth in the city charter. Charter, art. 3, sec. 26, art. 6, secs. 2 to 13; Ellis v. Railroad, 51 Mo. 200; Leslie v. St. Louis, 47 Mo. 474; Anderson v. St. Louis, 47 Mo. 479; St. Louis v. Gleason, 93 Mo. 33; Leonard v. Sparks, 63 Mo. App. 585; St. Louis v. Frank, 9 Mo. App. 579; State ex rel. v. St. Louis, 67 Mo. 113.

VALLIANT, J.—This is an action on a bond in which the plaintiff is seeking to recover $150,000 to be used in the construction of a bridge designed for a public viaduct over the tracks of defendants along the line of what was Clark avenue extending from Eighteenth to Twentieth street, to restore, to that extent, to the public for use as a highway that much of Clark avenue which was vacated by the city for the use of the defendants under the contract hereinafter considered.

In 1891 the defendants had conceived the purpose of building a great structure to be known as the "Union Station" with appropriate appurtenances and facilities. It was to extend from Eighteenth street on the east to Twentieth street on the west, and from Market street on the north to as far south as was necessary. In the execution of this purpose it was desired by the defendants to occupy with their structure the areas contained in certain streets south of and parallel with Market street between Eighteenth and Twentieth, one

of which was Clark avenue, and, by contract with the defendants, the city by an appropriate ordinance vacated those streets to that extent. In the contract it was stipulated that "should the city of St. Louis at any time provide by ordinance for the building of a bridge over Clark avenue between Eighteenth street and Twentieth street the said Union Depot Company and Terminal Railroad Association shall pay into the city treasury as part payment of the construction of said bridge the sum of one hundred and fifty thousand dollars." Under that contract the streets were vacated and turned over to defendants to be occupied for their use, the Union Station was built, and the vacated streets are now occupied by defendants and covered with their railroad tracks. In 1897 the city passed an ordinance providing for the construction of the bridge and demanded of defendants the payment of the $150,000 specified, which defendants refused and the city brought this suit.

In their answer the defendants admit the enactment of the ordinance vacating the streets and their obligation to pay into the city treasury the sum of $150,000 in part payment of the expense of constructing the bridge when the city should by ordinance provide for its construction, but they deny that the city has lawfully so provided, and they point out many features of the ordinance and the proceedings in relation thereto which they deem defects that render it invalid. The ordinance vacating the streets for the benefit of the defendants is No. 15989 passed in 1891. The Union Station was finished in 1894. In 1897 the city passed the ordinance 18834, which the plaintiff contends provided for the construction of the bridge. This suit was begun in 1899.

Section 7 of the ordinance 15989 under which the bond sued on was executed is as follows:

"In consideration of the rights and privileges

herein granted, said Union Depot Company of St. Louis and said Terminal Railroad Association of St. Louis or their successors or assigns, hereby agree, that should the city of St. Louis at any time provide by ordinance for the building of a bridge over Clark avenue between Eighteenth street and Twentieth street, the said Union Depot Company and Terminal Railway Association shall pay into the city treasury as part payment of the construction of said bridge the sum of one hundred and fifty thousand dollars, and said Union Depot Company and Terminal Railroad Association shall for each bridge hereafter constructed across its railroad tracks between Ninth street and Eighteenth street, pay into the city treasury the sum of fifteen thousand dollars, said payments to be made within thirty days after the construction of said bridge or bridges is commenced. It is further provided, that upon the acceptance of this ordinance, the Union Depot Company and the Terminal Railroad Association of St. Louis, will file with the City Register its penal bond, in the sum of two hundred thousand dollars, for the faithful compliance of the provisions of this section. Said bond to be approved by the Mayor and Council. The city of St. Louis reserves the right to occupy such space as shall be necessary for said bridge and supports thereunder, and the said companies hereby grant to said city such rights and privileges as may be necessary to construct and operate said bridge or bridges, provided the same shall be so constructed as not to interfere with the operation of trains. Said Union Depot Company and said Terminal Railroad Association of St. Louis also agree to relinquish any right or claim for damages against said city of St. Louis, that may accrue by reason of the erection and construction of said bridge and approaches or change of grades of streets adjacent thereto to any real estate which they may now own or may hereafter acquire."

Ordinance 18834 is as follows:

"An ordinance authorizing the building of a bridge over Clark avenue, between Eighteenth street and Twentieth street, and providing for the cost thereof.

"Be it ordained by the Municipal Assembly of the city of St. Louis, as follows:

"Section 1. The Board of Public Improvements is hereby authorized and directed to cause a bridge to be built over Clark avenue, between Eighteenth street and Twentieth street, over the tracks of the Union Depot Company of St. Louis and of the Terminal Railroad Association of St. Louis, including approaches along Eighteenth street and Twentieth street, in accordance with plans adopted by said Board of Public Improvements.

"Sec. 2. The bridge shall have a width of not less than fifty-four feet and shall be constructed of steel, and the roadway shall consist of steel sheathing, concrete and a brick pavement. The piers and retaining walls shall be built of Portland cement concrete and shall rest on piling wherever required.

"Sec. 3. Whereas, the Union Depot Company of St. Louis and the Terminal Railroad Association of St. Louis, their successors or assigns, are obligated, by the terms of ordinance number fifteen thousand nine hundred and eighty-nine, approved February twenty-fifth, eighteen hundred ninety-one, to pay into the city treasury as part payment of the construction of the bridge herein authorized the sum of one hundred and fifty thousand dollars; therefore said sum of one hundred and fifty thousand dollars, when so paid into the city treasury, is hereby appropriated and set apart to the fund for the construction of Clark avenue bridge. The total cost of the work contemplated by this ordinance, being estimated at one hundred and fifty-one thousand dollars, the portion thereof to be

paid by the city of St. Louis, out of municipal revenue, is estimated at one thousand dollars, and said sum of one thousand dollars is hereby appropriated and set apart out of the fund, Street, Bridges and Culverts—new work—to the fund for construction of Clark avenue bridge, to begin the construction of said bridge.

"Sec. 4. There is hereby appropriated and set apart out of municipal revenue to fund for Street, Bridges and Culverts—new work—the sum of one thousand dollars.

"Sec. 5. As soon as the Union Depot Company of St. Louis and Terminal Railroad Association of St. Louis shall pay into the city treasury, as part payment of the construction of said bridge, the sum of one hundred and fifty thousand dollars, as provided for and agreed to, as the consideration for certain rights and privileges granted to the said Union Depot Company, of St. Louis and the Terminal Railroad Association of St. Louis, evidenced by their acceptance of said ordinance number fifteen thousand nine hundred and eighty-nine, approved February twenty-fifth, eighteen hundred and ninety-one, the auditor shall credit said sum to the fund set apart for construction of Clark avenue bridge."

I. One of the main defects of this ordinance according to the defendant's theory is that it is in violation of section 12 of article 5 of the city charter which is as follows:

"Sec. 12. All ordinances that contemplate the payment of any money shall, upon their second reading, be referred to the appropriate committee who shall obtain the indorsement of the comptroller thereon to the effect that sufficient unappropriated means stand to the credit of the fund therein named, to meet the requirements of said ordinance, or it shall not be lawful to recommend its passage, or pass the same. Provid-

ed, that no claim shall be paid without the approval of the auditor.''

In connection with that section is to be read the following it being a part of section 28 of article 6: ''Every ordinance requiring such work to be done shall contain a specific appropriation from the public revenue and fund, based upon an estimate of cost to be endorsed by the president of the Board of Public Improvements, on said ordinance for the whole of the cost of each street, part of street, or other object respectively.''

The criticism is that this ordinance shows that the estimated cost of the bridge was $151,000, yet only $1,000 was appropriated, and that it did not contain the endorsement of the comptroller that sufficient unappropriated means stood to the credit of the fund named to meet the requirements of the ordinance.

This ordinance did contain the certificate of the comptroller to cover the appropriation of one thousand dollars but not of $151,000.

The certificate was in these words: ''I hereby certify that if section four of this bill becomes a part of the ordinance, sufficient means will stand to the credit of fund for Street, Bridges and Culverts—new work—to cover the within appropriation of one thousand dollars.''

Section 6 of article 5 declares: ''All taxes collected for municipal purposes, from all sources whatever, shall be designated 'municipal revenue.' '' That revenue is the source from which all the special funds are to be supplied, and is apportioned by the Municipal Assembly to the various funds to meet the requirements of the different departments of the city government, and when appropriation is made for a public work it is made out of the particular fund apportioned for that purpose, but it all comes in the first place out of the general ''municipal revenue.'' So in this case

the comptroller does not say that there is now in the fund for Street, Bridges and Culverts, unappropriated, one thousand dollars, but, referring to section 4 of the proposed ordinance which appropriates $1,000 out of the general municipal revenue to this special fund, he says if that section is adopted as a part of the ordinance then there will be that much unappropriated money in that fund to meet the demands of that ordinance. In other words, the comptroller says to the Municipal Assembly, If you transfer from the general revenue to this special fund one thousand dollars, as you propose to do, that amount will be in that fund to meet the appropriation you make towards the cost of this bridge. The comptroller knew the condition of the general revenue fund and his certificate is equivalent to saying that if the Municipal Assembly directs a transfer of $1,000 from that fund to this, the money is on hand to meet it. But the main insistence of the defendants on this point is that the comptroller does not certify that the sum of $151,000 is in the special fund to meet the appropriation, and that the ordinance does not appropriate $151,000 to the work, although that is the estimated cost endorsed by the president of the Board of Public Improvements on the bill then pending.

The language of section 28 above quoted shows by its context that it refers only to work to be paid for out of the city treasury; the language is: "Every ordinance requiring such work to be done shall contain a specific appropriation," etc. "Such work" means work of the character mentioned in the preceding section of that article; there is nothing in any clause of that whole article that indicates that it relates to works of which the cost or any part of the cost is to be paid for otherwise than out of the city treasury. But in the case at bar we have a bridge to be built of which the estimated cost is $151,000 and the defend-

ants have agreed, for a very valuable consideration, to pay into the city treasury, to be used for that purpose only, the sum of $150,000. What act of appropriation was necessary? If the defendants had paid in the money the Municipal Assembly could not have appropriated it to any other purpose. The city of St. Louis ranks in point of credit with the best in the land. When these defendants were making this contract it never occurred to them to ask that the city give security that it would not waste or misappropriate the money, but they said in effect, Give us these streets and whenever you get ready to build this bridge we will put $150,000 into your treasury to be used by you in the construction of the work. But now when the city calls for the money they answer that you must first appropriate out of your city treasury $151,000, and use that in the construction of the bridge before you can demand the payment by us. The defendants misconstrue the charter provision which they invoke; it was intended to cover appropriations out of the city treasury made to pay for work to be done at the expense of the city.

But if formal appropriation of the $150,000 which the defendants are called on to pay were necessary the ordinance complies with that requirement as far it is possible to do so, for it declares that when the defendants pay the money into the city treasury it shall be so appropriated.

We hold that the ordinance does not violate the terms of section 12, article V, or of section 28, article VI of the charter.

II. Defendants interpret section 7 of ordinance 15989 to mean that the money sued for is not due until the work of construction has begun, and they say that since it appears from the evidence that the only work for which the city has made a contract and the only work begun was the building of two concrete piers,

therefore, in reality, the work of constructing the bridge has not begun. The argument is that the city cannot let the contract to do the work until it makes the appropriation of $151,000 and has that fund in hand set apart especially to that purpose, that is, the city must proceed as if it were a work to be done at the expense of the city alone and must become bound for the total expense and take the risk of collecting the amount from the defendants afterwards. We do not doubt but that if the city should build the bridge contemplated in the contract at its own expense, it could afterwards recover of defendants the amount claimed, but that would be a recovery for a breach of the contract, and if the defendants paid the money at the end of the lawsuit, or even if they should withhold the money until the bridge was completed and then pay the amount without a suit, they would not have fully complied with their agreement, because their agreement is to pay the money into the city treasury to be used in the construction of the bridge.

Defendants misconstrue that part of section 7 of ordinance 15989 calling for payments by defendants after the work of construction has begun; that refers to the other bridges mentioned in that section contemplated to be built crossing defendants tracks between Ninth and Eighteenth streets. The time for the payment of this $150,000 is specified in the language of the contract itself; it is that should the city of St. Louis at any time provide by ordinance for the building of the bridge on Clark avenue, the defendants shall pay, etc.; the time to pay is when the necessary ordinance is passed.

If it be said that it would be unreasonable to require the defendants to pay into the city treasury the $150,000, and take the risk of the bridge never being built, although it would seem that defendants consid-

211 Sup.—25

ered it quite reasonable to require the city to build the bridge and take the chance of collecting the money from them afterwards, a sufficient answer to that would be that that is a contingency that might have been, but was not, anticipated and guarded against in the contract, and defendants have no right to call for an amendment of the contract at this time.

Besides, there is not in this record or in the history of the case, as it appears in the briefs, any reason to think that the parties to this contract dealt with each other on a basis of distrust or suspicion; they dealt with each other on the high plane that the character of each contracting party justified, and there is not in the record anything to justify the charge of bad faith on either side. But even if the city were to attempt to misuse the money after the defendants had paid it in, they would have remedy to prevent or right the wrong; they are not dealing with an irresponsible party.

III. The point on which defendants seem chiefly to rely is that according to the plans and specifications referred to in ordinance 18834, the approaches to the bridge are not on Clark avenue, but are on Eighteenth and Twentieth streets.

In the opinion filed in Division 1 by our learned Brother GRAVES, authorities are cited to show that approaches are to be deemed a part of the bridge, and where a party is under obligation to keep the bridge in repair he is liable if he does not keep the approaches in repair. That is sound doctrine. Although for certain purposes the approaches are to be considered as part of the bridge, yet no artificial reasoning can dispel the fact that there is a physical difference between the bridge and the approach. The very words "bridge" and "approach" carry different meanings to the mind. Congress has jurisdiction of the navigable rivers and you cannot build a bridge over one, even though it be

altogether in one State, until Congress grants author-
ity, but the jurisdiction of Congress is from bank to
bank of the river; if you want authority to build your
approaches you must obtain it under the State laws.
Congress not long ago granted a corporation the right
to build a bridge over the Mississippi at Thebes, but
when the company came to the necessity of condemn-
ing land for its approaches it did not apply to Congress
for leave, but to the courts of this State. [Southern
Ill. & Mo. Bridge Co. v. Stone, 174 Mo. 1.] Whilst
we all say that for some purposes the approach is a
part of the bridge, yet it would be mere affectation
if we should say that we perceive no difference between
the structure that spans the river and that on which
we approach its elevation. We here have a contract
calling for a bridge over an artificial stream whose
east bank is Eighteenth street and whose west bank
is Twentieth street, that is the only structure specified
in the contract, and the only measure specified is from
Eighteenth to Twentieth street. Defendants say that
ordinance 18834 is bad because it calls for a bridge
on Eighteenth street, Clark avenue and Twentieth
street whereas their contract calls for a bridge on
Clark avenue only. So much of the structure called
for by the ordinance as is contained in the bridge
proper is over that portion of Clark avenue that was
vacated for the benefit of the defendants, but the ap-
proaches are on Eighteenth and Twentieth streets, and
defendants, recognizing no distinction between the
bridge proper and the approaches, insist that the con-
tract means that the approaches, too, must be on Clark
avenue.

Defendants are mistaken in point of fact when
they say that this bridge is to be built over Clark ave-
nue. Clark avenue is a street several miles in length,
but this bridge is to be built over only a very small
part of it, to-wit, from Eighteenth to Twentieth street.

That is the only part of the street in which defendants had any peculiar proprietary interest, the only part in regard to which they had any right to make a contract with the city, and in point of fact it is the only part referred to in the contract. If we should adhere as closely to the letter of the contract as, on this point, the defendants would have us do, we would have to say that the whole of this bridge, approaches and all, must be built over that part of Clark avenue that lies between Eighteenth and Twentieth street. But that could not be done, because the approaches would come so low at each end as to obstruct the passage of trains and deprive the defendants of a large part of their track space, which the contract says must not be done. Therefore, it follows that the approaches cannot be constructed on that part of Clark avenue lying between the two streets named, which is the only part of Clark avenue specified in the contract and the only part to which the city has relinquished any right. The approaches must necessarily be built outside of that part of Clark avenue over which the contract says the bridge is to be built and the contract does not say where they shall be built. They must necessarily be built in a street or streets not specified. Whose streets are they and who is to say which of them is to bear this servitude? This choice of location for these approaches is not to be made in the interest of the defendants alone, but in that of the public, and the city is to make the choice. The city has jurisdiction over all its streets; it has surrendered its jurisdiction in that respect only as to the small part of Clark avenue above specified. If, in its scheme to build a bridge over that part of Clark avenue, parts of that street or of other streets must be sacrificed or marred, the city alone has the authority to say which it shall be.

We hold that in the construction of this bridge the

city has the right, if it so wills, to build the approaches on Eighteenth and Twentieth streets.

IV. Defendants also contend that in the present condition of Eighteenth street the city cannot build the approach there because that street is only sixty feet wide while the approach designed is fifty-four feet wide, and there is already a double-track street railroad on the street, therefore the approach would impair or destroy the street for the uses to which it is at present devoted, and would damage the adjacent property, which the city would have no right to do until the damages were ascertained and paid for.

In the consideration of this point we must bear in mind whose property it is we are dealing with and whose rights are being interfered with. This bridge is not being designed for the benefit of the defendants, but for the benefit of the public; the defendants will have no proprietary interest in it, and no interest of any kind different from that of any member of the travelling public or any other owner of abutting property. It is stipulated in the contract that the bridge is to be so constructed as "not to interfere with the operation of trains;" that point being guarded, the only care the city is to observe is the promotion of the interest of the general public. The only interest the defendants have in either of the three streets named, different from that which any citizen has, is in that part of Clark avenue measured from Eighteenth street on the east to Twentieth street on the west; as to the rest of that street, and as to the other streets, the dominion of the city over them is unimpaired, and the city may devote them to any lawful use it sees fit, without asking leave of the defendants.

The streets belong to the city, and the city may use them as it pleases, provided it pleases to use them only as public highways.

It is necessary to call these points sharply to our

minds because the challenge is that the city has no right to use Eighteenth and Twentieth streets as it now purposes to do.

The owner of property abutting on a street has the right of ingress and egress over it to and from his property, and in that respect he has an interest in the street that differs from the interest of the general public, and if that right is impaired he may call the city to account for the injury, but that is a question between him and the city, and, even in such case, if the impairment of the use of the street is occasioned by putting it to a servitude to which the city has the right to put it, damages are not always recoverable. [Nagel v. Railroad, 167 Mo. 89.] But in any event the question of the right of the city to use the street for a lawful purpose that would inflict damage on adjoining property is a question between the owner of the property and the city; a third party has no right to interfere, and as to the street railroads now on the streets, the interference with them is a matter between the city and the street railroad company, it is no concern of these defendants. In the case at bar it does not appear that the location of the approaches, as designed, would damage the defendants' property or interfere with their use of it, but if it did the defendants by their contract have expressly waived it.

It has been held by this court that the city has no right to give a railroad company a license to use a public street in such manner as to practically destroy its service as a public highway. [Lockwood v. Railroad, 122 Mo. 86.] But that is not the condition which we are now to consider. The use that is designed to be made of Eighteenth and Twentieth streets by these approaches is an entirely public use, no one can make any use of it that every one cannot make; the approaches when constructed will be in their character as much public highways as the streets were before.

Whilst the city has no right to convert a public street into a private way, or give any one a right to use it in a manner to exclude anyone else, yet it has the right to change the form and proportions of the street and devote it to public travel in a manner different from that in which it had before been used. And the city is the judge of what is the best shape in which to put a street in order to promote the public convenience. Of course in making a change the city may be liable for damages caused or threatened adjoining property and its hands may be stayed until that damage is ascertained and paid, but, as already said, that is a matter to be settled with the injured party, it does not concern anyone else and it does not destroy the city's legal right to make the change.

Let us turn now to the facts of this case. Here the city is designing to erect in a sixty-foot street a bridge approach fifty-four feet wide; for a distance of about 170 feet from the point where it begins to rise it is to rest on a solid earthwork enclosed in concrete retaining walls, leaving for that length practically only about six feet wide of the street clear of the structure. If that plan is not changed or if the street is not widened, all travel coming south in vehicles on Eighteenth street must stop there or be diverted over this contemplated bridge or turn east on Market street until it reaches Seventeenth street or west to Twentieth or Twenty-first and coming north the travel would end there or be diverted east on Clark avenue to Seventeenth street. Unquestionably that would be a serious change in the plan of the street, but has the city authority to do it, if so, who is to forbid? In 1891 the city granted to these defendants the right to build their structure over several streets which as effectually obstructed traffic on those streets, or diverted it out of its usual course, as will the obstruction the city now designs to build affect the travel on this street. Was

the vacating of those streets for the benefit of the defendants unlawful, did the city have the right to do it? After Walnut street and Clark avenue between Eighteenth and Twentieth were occupied by the defendants, the travel on those vacated streets going either east or west was diverted to Market street, and covered a greater distance, to get back on either Walnut street or Clark avenue, than the traveller would experience by being diverted from his direct course by this proposed obstruction on Eighteenth street. The authority of the city to do what it did for the benefit of the defendants in 1891 is not now questioned by them and we do not question the authority of the city to do what it now proposes to do for the benefit of the public.

We hold, therefore, that if the city concludes to erect the approach fifty-four feet wide in Eighteenth street without widening the street it has the right to do so, subject of course to the payment to adjacent property-owners of whatever damages the city may be liable for, but with that these defendants have no concern.

But before the defendants can be required to pay the $150,000 now in question they have a right to know, not with absolute certainty as to detail, but with reasonable certainty as to general form, the character of the bridge and the approaches. They have no right to dictate the plans and specifications of the bridge, that is the city's privilege, but they have a right to know what the city's plans are.

Eighteenth street coming from the south to Clark avenue, and thence on north to or near the alley between Clark avenue and Walnut street, is 120 feet wide. What is known as the Eighteenth Street Bridge is a viaduct that carries the street travel over the vast sea of railroad tracks located there. The north end of the Eighteenth Street Bridge is at or near Clark avenue. From the alley above named, going north, Eighteenth

street is only sixty feet wide. So much of the approach in question as is designed to be a solid embankment is in that part of the street that is only sixty feet wide, it rises from a point about 170 feet north of the alley and extends south to a point about on a line with the alley, leaving for that distance only about six feet wide in the street. Whilst, as above shown, the city, subject to the conditions mentioned, would have the right to so change the form and course of this street, yet there is sufficient in this record to show that the city when it passed the ordinance 18834 providing for the building of the bridge did not intend to so impair Eighteenth street, therefore the defendants have the right to say that until the city gives further expression of its purpose in this respect they ought not to be required to pay into the city treasury the $150,000 in question. The ground on which we reach this conclusion is as follows: The Union Station was completed in 1894. In 1895 the city passed an ordinance the purpose of which was to condemn property to increase the width of Eighteenth street from sixty to one hundred feet from a point near the alley above named, thence north to Pine street, a distance of three and a half city blocks, and proceedings were pending in court to effect that purpose in 1897 when ordinance 18834 providing for the construction of this bridge was passed. Thus it appears that the construction of the bridge, according to the plans and specifications referred to in that ordinance, was a part of a scheme that included the widening of Eighteenth street. But when the report of the commissioners in that condemnation proceeding came in the city repealed the ordinance authorizing the widening of the street and the proceeding in court was dismissed.

The present suit to recover the $150,000 was founded on ordinance 18834 and was begun March 16, 1899;

the ordinance repealing the ordinance to widen Eighteenth street was passed April 6, 1899.

So far as the city has indicated its purpose, speaking by ordinance through its Municipal Assembly, it has never intended to reduce Eighteenth street to the condition that would result if the approach should now be constructed as planned; we do not say that the city could not do so, but we do say that it has not so expressed its purpose by ordinance. We interpret ordinance 18834 as contemplating a street one hundred feet wide.

Under the city charter the city cannot take steps to widen Eighteenth street on that side by condemnation until the lapse of ten years from April 6, 1899. But the widening of Eighteenth street for the purpose of this approach is not so extensive an undertaking as was the former act, that covered a distance of three and a half city blocks, but this would require only a widening of the street for a distance of about a half block. The result of the repeal of the ordinance to widen Eighteenth street is that unless the city intends to so block the way as to divert the travel around that part of the street as above mentioned, it must either reduce the width of the approach or widen the street. It can reduce the width of the approach by an amendment of ordinance 18834, or it can acquire sufficient adjoining property to widen the street by agreement with the owner, or by waiting another year begin condemnation proceedings. But until it does one or the other it is to be adjudged as having temporarily abandoned the plan referred to in ordinance 18834, and until by ordinance it reasserts that plan or adopts some other plan it has no right to require the defendants to pay the sum sued for into its treasury.

The city may at any time it sees fit to do so, by a new original ordinance or by an amendment to ordinance 18834, "provide . . . for the building of a

bridge over Clark avenue between Eighteenth and Twentieth streets" (to quote the language of section 7 of ordinance 15989), and locate the approaches where it sees fit, and when it has done so it will be entitled to demand of the defendants the payment of the $150,000 therein specified. For the reasons above stated we hold that ordinance 18834 was a part of a scheme that involved the widening of Eighteenth street and the repeal of the ordinance authorizing the widening of that street rendered ordinance 18834 ineffective for the purpose of building the bridge. We, therefore, hold that for the present and until the city shall have taken action as above indicated it is not entitled to recover the sum sued for.

The judgment is affirmed. *Gantt, C. J., Burgess* and *Lamm, JJ.*, concur; *Fox, Graves* and *Woodson, JJ.*, concur in the result, for reasons set out in opinion by *Graves, J.*

## SEPARATE OPINION.

GRAVES, J.—We concur in the result, but for the reasons assigned in the following opinion heretofore filed in Division One, which is as follows:

In February, 1891, the Municipal Assembly of the city of St. Louis passed an ordinance, numbered 15989, entitled: "An ordinance authorizing the establishment and maintenance of a Union Depot in St. Louis and the construction of a depot and passenger station in, over, under and upon certain streets and alleys in the city of St. Louis and to provide for vacating certain streets and alleys."

This ordinance, besides vacating certain streets and alleys therein named for that purpose, likewise authorized the construction of the present Union Depot and passenger station in said city, by the defendants in the present case. The section more particu-

larly involved in this case is section 7 of that ordinance, reading as follows:

"Section 7. In consideration of the rights and privileges herein granted, said Union Depot Company of St. Louis and said Terminal Railroad Association of St. Louis or their successors or assigns, hereby agree, that should the city of St. Louis at any time provide by ordinance for the building of a bridge over Clark avenue, between Eighteenth street and Twentieth street, the said.Union Depot Company and Terminal Railroad Association shall pay into the city treasury as part payment of the construction of said bridge the sum of one hundred and fifty thousand dollars, and said Union Depot Company and Terminal Railroad Association shall for each bridge hereafter constructed across its railroad tracks between Ninth street and Eighteenth street, pay into the city treasury the sum of fifteen thousand dollars, said payments to be made within thirty days after the construction of said bridge or bridges is commenced. It is further provided that upon the acceptance of this ordinance, the Union Depot Company and the Terminal Railroad Association of St. Louis, will file with the city register its penal bond, in the sum of two hundred thousand dollars, for the faithful compliance of the provisions of this section. Said bond to be approved by the mayor and council. The city of St. Louis reserves the right to occupy such space as shall be necessary for said bridge and supports thereunder, and the said companies hereby grant to said city such rights and privileges as may be necessary to construct and operate said bridge or bridges, provided the same shall be so constructed as not to interfere with the operation of trains. Said Union Depot Company and said Terminal Railroad Association of St. Louis also agree to relinquish any right or claim for damages against said city of St. Louis that may accrue by reason of the erection and construction

of said bridge and approaches or change of grade of streets adjacent thereto to any real estate which they may now own or may hereafter acquire."

In an attempt to avail itself of the rights reserved to it by section 7, above quoted, there was passed by the Municipal Assembly Ordinance No. 18834, as follows:

"An ordinance authorizing the building of a bridge over Clark avenue, between Eighteenth street and Twentieth street, and providing for the cost thereof.

"Be it ordained by the Municipal Assembly of the city of St. Louis, as follows:

"Section 1. The Board of Public Improvements is hereby authorized and directed to cause a bridge to be built over Clark avenue between Eighteenth street and Twentieth street, over the tracks of the Union Depot Company of St. Louis and the Terminal Railroad Association of St. Louis, including approaches along Eighteenth street and Twentieth street, in accordance with plans adopted by said Board of Public Improvements.

"Sec. 2. The bridge shall have a width of not less than fifty-four feet and shall be constructed of steel, and the roadway shall consist of steel sheathing, concrete and a brick pavement. The piers and retaining walls shall be built of Portland cement concrete and shall rest on piling wherever required.

"Sec. 3. Whereas, the Union Depot Company of St. Louis and the Terminal Railroad Association of St. Louis, their successors or assigns, are obligated, by the terms of ordinance number fifteen thousand nine hundred and eighty-nine, approved February twenty-fifth, eighteen hundred ninety-one, to pay into the city treasury as part payment of the construction of the bridge herein authorized, the sum of one hundred and fifty thousand dollars; therefore said sum of one hundred and fifty thousand dollars, when so paid

into the city treasury, is hereby appropriated and set apart to the fund for the construction of Clark avenue bridge. The total cost of the work contemplated by this ordinance being estimated at one hundred and fifty-one thousand dollars, the portion thereof to be paid by the city of St. Louis, out of municipal revenue, is estimated at one thousand dollars, and said sum of one thousand dollars is hereby appropriated and set apart out of the fund, Street Bridges and Culverts, new work, to the fund for construction of Clark avenue bridge, to begin the construction of said bridge.

"Sec. 4. There is hereby appropriated and set apart out of municipal revenue to fund for Street Bridges and Culverts—new work—the sum of one thousand dollars.

"Sec. 5. As soon as the Union Depot Company of St. Louis and Terminal Railroad Association of St. Louis shall pay into the city treasury, as part payment of the construction of said bridge, the sum of one hundred and fifty thousand dollars, as provided for and agreed to, as the consideration for certain rights and privileges granted to the said Union Depot Company of St. Louis and the Terminal Railroad Association of St. Louis, evidenced by their acceptance of said ordinance numbered fifteen thousand nine hundred and eighty-nine, approved February twenty-fifth, eighteen hundred and ninety-one, the auditor shall credit said sum to the fund set apart for construction of Clark avenue bridge.

"Approved March 11, 1897."

Defendants gave the bond provided for by said section 7, and this cause is an action by the city upon that bond, laying damages in the sum of $150,000. At a trial before a jury, upon the close of the whole case, a peremptory instruction was given directing a verdict for defendants, whereupon the plaintiff took a nonsuit with leave, and after a futile motion to set the

St. Louis v. Terminal Railroad Assn.

same aside, duly perfected its appeal to this court.

To sustain its petition, the plaintiff offered the following evidence: (1) Ordinance 15989, the original Union Depot ordinance first herein referred to; (2), the acceptance of said ordinance by defendants; (3), the bond sued upon, given under the ordinance numbered 15989; (4), Ordinance 18834, herein above fully set out; (5), House Bill 311 and the endorsements thereon, which said House bill is ordinance 18834, and the endorsements are as follows:

"St. Louis, December 18, 1896.

"The Board of Public Improvements estimates the cost of the entire work contemplated by this ordinance at one hundred and fifty-one thousand dollars; of which sum one thousand dollars is to be paid by the city out of municipal revenue; and one hundred and fifty thousand dollars, by the city out of the special fund to be paid into the city treasury under the provisions of ordinance 15989.

"ROBT. E. McMATH,
President.

"Attest:
Emory S. Foster, Secretary."

"Ordinance adopted and recommended by the board to the Municipal Assembly, December 18, 1896.

"Vote: ayes, 6; noes, 0.

"ROBT. E. McMATH,
President."

"COMPTROLLER'S OFFICE.

"St. Louis, Jan'y 29th, 1897.

"I hereby certify that if section 4 of this bill becomes part of the ordinance, sufficient means will stand to the credit of fund for Street. Bridges and Culverts —new work, to cover the within proposed appropriation of one thousand dollars.

"ISAAC H. STURGEON,
Comptroller."

Plaintiff then introduced a contract between the city of St. Louis and the Meyers Construction Company; the general description of the work to be done under that contract is succinctly stated in this language: "The work comprised in this contract consists in building one pair of foundation piers of the Clark avenue bridge, near Eighteenth street, in accordance with the drawing on file in the office of the street commissioner or his duly authorized agents."

The bond of the Construction Company with this contract and a part thereof was in the sum of $461.71.

By oral testimony and admissions, the plaintiff's testimony tended to establish the following facts: that the Construction Company began work under their contract and did work in amount not exceeding $200; that it became necessary to enter the Union Depot grounds in the performance of said work, and defendants refused said contractors the privilege of entering said grounds to do the work and also refused the representative of the city, whose duty it was to supervise the work, the privilege or right of entering their grounds for that purpose; that defendants upon timely demand refused to pay to the city the $150,000 mentioned in section 7 of Ordinance 15989; that the said proposed bridge would not interfere with the operation of trains to and from said Union Depot.

The answer of the defendants which is very lengthy, after making certain admissions, consists of a general denial and a number of special defenses, but these special defenses can be best considered along with the evidence introduced thereon, in the course of the opinion, and will be considered in so far as required, in that way.

Other general facts are as follows: the north line of Union Station is Market street; the east line, Eighteenth street; the west line, Twentieth street; south of Market street is Walnut street; between which

and Walnut street was an alley; for the purpose of the Union Station, Walnut street, Clark avenue, and these two alleys had been vacated between Eighteenth and Twentieth streets. When Clark avenue reached Twentieth street, there was a considerable jog to the south, from whence it continued west. The Union Depot grounds continue south from Clark avenue, and cover other vacated streets and alleys, as particularly designated in ordinance 15989. The proposed bridge was to reach from Eighteenth street to Twentieth street on Clark avenue, with an approach running north some four hundred feet to a grade in Eighteenth street, and with two approaches on the west end, one running north some six hundred feet to a grade in Twentieth street, and the other south in Twentieth street, and thence west on Clark avenue to a grade in said avenue. The numbered streets run north and south, and those designated by name and the alleys run east and west. Many details and surroundings of this case will be found in the opinion of this court in the case of Lester Real Estate Co. v. St. Louis, 169 Mo. 227, which was an injunction suit to restrain the construction of said bridge by a property-owner on Eighteenth street.

I. To our mind there is no question as to the correctness of the action of the trial court in this case, and for several reasons, some of which will be noticed. By Ordinance No. 18834, the city has in no way obligated itself for the construction of this proposed bridge. In its present shape no contract could be made under the ordinance for more than one thousand dollars, and in making the limited contract which it did, the city evidently recognized the limitations of the power to contract under the ordinance in question. This same ordinance was before us in Lester Real Es-

tate Co. v. St. Louis, 169 Mo. l. c. 233, and we there said:

"In fact, under section 28 of article 6 of the city charter, only work to the amount of the one thousand dollars appropriated by that ordinance could be legally contracted for or done, for that provision of the charter requires a specific appropriation to be made by every ordinance authorizing public work to be done. And section 12 of article 5 of the charter further provides that all ordinances that contemplate the payment of any money shall, upon their second reading, be referred to the appropriate committee, who shall obtain the indorsement of the comptroller thereon to the effect that sufficient unappropriated means stand to the credit of the fund therein named to meet the requirements of the ordinance, and it is made unlawful to pass any such ordinance without such indorsement of the comptroller."

We think the foregoing from that case is a correct construction of the St. Louis charter provisions. Under these provisions the city must appropriate funds, not a mere debt from another, due or to become due. What is attempted to be done here is to make an alleged debt, growing out of contract, to take the place of actual funds, in an ordinance authorizing a public improvement, and making an appropriation therefor. This, in our judgment, cannot be done. Under the certificate of the Comptroller, there were funds to meet an appropriation of $1,000, but not $151,000. Under section 12 of article 5 of the charter no valid ordinance could have been passed authorizing the expenditure of the estimated cost of this bridge until the comptroller certified that "sufficient unappropriated means stand to the credit of the fund to meet the requirements of said ordinance." Said section 12 reads: "All ordinances that contemplate the payment of any money shall, upon their second reading, be referred to the ap-

propriate committee, who shall obtain the endorsement of the comptroller thereon to the effect that sufficient unappropriated means stand to the credit of the fund therein named to meet the requirements of said ordinance, or it shall not be lawful to recommend its passage, or pass the same; provided, that no claim shall be paid without the approval of the auditor."

To our minds this charter provision is not only clear, but mandatory. Any ordinance passed in violation thereof is void. So that if Ordinance 18834 is an ordinance appropriating $151,000, it is void, as violative of the charter provision. The comptroller did not certify upon the bill by his endorsement that there was $151,000 of unappropriated funds.

But beyond all this, when we read section 7 of Ordinance 15989, supra, it is clear that there is no liability upon the part of defendants, until the city has in proper manner become obligated for the bridge.

The clause in said section that "should the city of St. Louis at any time provide by ordinance for the building of a bridge over Clark avenue, between Eighteenth street and Twentieth street, the said Union Depot Company and Terminal Railroad Association shall pay into the city treasury as part payment of the construction of said bridge the sum of one hundred and fifty thousand dollars," should be construed to mean an ordinance in such form as will at least show an obligation upon the part of the city to build the bridge. It should be an ordinance which would at least authorize contracts covering the proposed improvement, and not an ordinance authorizing the expenditure of anything less than the cost or estimated cost of the entire structure. Not only so, but further in our judgment there is no liability upon the defendants until the city, under a valid ordinance so authorizing it, has entered into contracts for the erection of the bridge in all its parts, and not simply a contract for a pair of

foundation piers, as in this instance. Defendants should have some guarantee that the bridge is to be built, before payment can be required. If the city can collect under the present state of the record, there is no assurance that the city will proceed further, and defendants would be left to an action to recover back the funds so paid or collected, if the city did not proceed.

The clause in section 7, supra, "Said payments to be made within thirty days after the construction of said bridge or bridges is commenced" means commenced under a valid ordinance authorizing the work and appropriating funds therefor, and valid contracts for the construction of the bridge. Contracts for the construction of two foundation piers, or for the manufacture of some bolt or rod to be used in the construction of the bridge, is not a commencement of the construction of the bridge, within any fair construction of the contract as expressed by the ordinance. Even a casual reading of the record before us shows the utter failure of the city to make out a case by the proof.

The obligations are mutual. Defendants should not be required to pay until there is some obligation upon the part of the city to be out the $150,000, as a part of the construction and contract price of the bridge. There was no such obligation upon the part of the city shown.

So that we hold that until such time as the city has become legally liable for the price of the proposed bridge, there is no liability upon the part of defendants for this $150,000, which was and is to be a mere part of the cost of the bridge. For this reason, if for no other, the action of the trial court in giving the peremptory instruction was proper. By this we mean that if the city is otherwise entitled to recover there would be nothing to prevent the passage of a

proper ordinance in the future and upon such ordinance base an action.

II. There may be several other questions, raised by defendants, just as fatal to plaintiff's case, as the one hereinabove discussed, but we will not lengthen this opinion by the discussion of but one more proposition which appears to our mind to be the real question upon which it was the purpose of the plaintiff in this action "to draw the fire" of this court. Defendants contend that the proposed bridge is not within the terms of Ordinance No. 15989, because the approaches thereto are a part of the bridge, and these approaches are not upon Clark avenue. Plaintiff contends that in the sense in which the term "bridge" is used, in the said ordinance, it should not be construed to include approaches, and inasmuch as the bridge proper is in Clark avenue, it is the bridge contemplated by section 7 of Ordinance 15989, supra. And to our mind it is apparent that this Ordinance No. 18834 was not passed so much with the view of actually constructing a bridge thereunder, but more to furnish the basis of an action, in which would be determined the contention, last hereinabove mentioned, for in view of the clear charter provisions, there is a lack of good faith upon the face of the ordinance itself. To determine this question some facts are required. The elevation of this proposed bridge is seventeen to nineteen feet or more. The approaches as appear from the blue print thereof are to be of structural steel or iron, for most of the distance, and at the extreme ends is provision for retaining walls of cement, evidently leaving it to be filled with dirt. The structure of the proposed approaches for a large portion of the distances, is not materially different from the bridge spans proper. Owing to the height of the bridge the approaches are, of necessity, long, as indicated by the lengths hereinbefore given.

Under these facts, (1) are these approaches a part of the bridge within the meaning of the ordinances, (2) and can the court so declare as a matter of law? In our judgment they are not only a part of the bridge, but the facts are so patent and conclusive that the court should have so declared as a matter of law. In 5 Cyc. 1084, the law is thus stated: "Inasmuch as the approaches necessary to make a bridge accessible are properly included within the meaning of the term, it follows that the duty to repair such approaches and abutments is upon the party whose duty it is to repair the bridge proper. The difficult point is the determination of what constitutes an approach as distinguished from the highway generally, which, in the absence of definite expression, must be determined by a consideration of what is reasonable under the circumstances of the particular case."

In the case at bar there is no trouble about distinguishing the approach from the highway generally. The proposed approaches were not to take up the whole highway or street, but only a portion thereof. The proposed scheme was to widen Eighteenth street, and thus both on Eighteenth and Twentieth streets, public thoroughfares were to be maintained as they now are, except they would be narrower than at present. The approaches here are therefore readily distinguishable from the highway proper.

The doctrine is thus stated in 4 Am. and Eng. Ency. Law (2 Ed.), 941: "Approaches and embankments are, as a rule, a part of a bridge, and the duty to repair includes them. If the charter does not expressly define the limits of a bridge in this respect, its extent must be determined by what is reasonable under the particular circumstances of each case. The extent of the duty to repair the approaches to a bridge, which was perhaps uncertain at common law, was declared and defined by statute 2 Hen. VIII., c. 5, to in-

clude the highway for a space of three hundred feet at each end of the bridge.''

It is said in several of the English cases that the statute above referred to was but declaratory of the common law, but to obviate all question as to who was responsible for the repair of the highway and the bridge, the statute fixed the distance which should be considered the approach at three hundred feet. The unbending rule at common law was to the effect that the approaches constituted a part of the bridge. In this State we have no statute modifying this common law rule. We have not defined the term ''bridge'' so that it appears in our statute with its common law meaning.

In the case of Freeholders v. Strader, 3 Harrison (N. J.) 108, the court said: ''The term, a bridge, conveys to my mind the idea of a passageway by which travelers and others are enabled to pass safely over streams or other obstructions. A structure of stone or wood which spans the width of a stream, but is wholly inaccessible at either end (whatever it may be in architecture), does not meet my ideas of what is meant in law and common parlance by a bridge. Sound policy, moreover, requires that we so consider the law as to compel those persons who erect the structure itself to make it accessible at its ends. It is then that an available passageway will be obtained for the public, when the body of the bridge itself is completed.''

And to a like effect are the remarks of ROWELL, J., in Tinkham v. Town of Stockbridge, 64 Vt. 480, 24 Atl. 761: ''The court charged in effect, that whatever was necessary to connect the wooden structure that spanned the stream and the stone abutments on which it rested with the highway built on the solid ground, and to make the structure accessible and useful as a part of the highway, was a part of the bridge. This was substantially correct. As we have no statute that

determines the question, we must resort to the common law to find out what, aside from the structure itself, constitutes a part of a bridge. By the common law of England, declared by 2 Hen. VIII, c. 5, and subsequent bridge acts, where the inhabitants of a county are liable to the repair of a public bridge, they are liable also to the repair of the highway at the ends of the bridge to the extent of three hundred feet. [King v. West Riding of York, 7 East 588.] In that case Lord ELLENBOROUGH said that he considered it as having been laid down long ago by Lord COKE that the three hundred feet of highway at the ends of the bridge are to be taken as a part of the bridge itself, being in the nature of the thing immediately connected with it, and the exact limits difficult in some cases to be ascertained from the continuation of the arches beyond the side of the river; that the highway within the limits of the three hundred feet at each end is dependent on the bridge as to its form and dimensions, as its level must be varied as the bridge is made higher or lower, so as to make the ascent or descent more gradual."

In an extensive note on the case of Railroad v. Daniels, 90 Ga. 608, in 20 L. R. A. 416, the eminent annotator, in a review of the cases, says: "The theory that the approach to a bridge constituting a necessary means of access thereto is to be regarded as a part of the bridge itself was so strongly fixed in the common law that it was established that for three hundred feet from the end of the bridge, the road must be regarded as a part of the bridge and kept in repair by the party liable for the repair of the bridge. [Reg. v. Lincoln, 3 Nev. & P. 273; Yorkshire West Riding v. Rex, 5 Taunt. 284, affirming 7 East 588. . . . In this country the general theory that the approach is a part of the bridge for most purposes has been accepted, but without adopting the distance of three hundred feet as

the measure of the extent to which the approach is to be regarded as a part of the bridge.''

We also find the same doctrine in Elliott on Roads & Streets (2 Ed.), p. 33, sec. 30, thus: ''The approaches are ordinarily part of the bridge, for the term 'bridge' describes the whole structure, including approaches, abutments, piers and all other parts which are necessary to make it a safe and convenient passageway for the public.''

The Supreme Court of Indiana, in Driftwood Valley Turnpike Co. v. Board of Com. of Bartholomew County, 72 Ind. l. c. 237, thus speaks: ''Upon this point there can be little or no doubt. A bridge would be a useless structure unless made accessible, and the approaches are as necessary as the bridge itself. It is said that 'The term bridge imports not only the structure itself and its approaches, but its abutments and embankments and railings, all of which must be kept so furnished that travel may safely pass.' [Shearm, & Redf. on Negligence (3 Ed.), sec. 253.]''

And the Supreme Court of Pennsylvania expresses the idea in this manner, in Penn Township v. Perry County, 78 Pa. St. l. c. 459: ''The design of bridging is to provide a safe and convenient passage for the public over some stream or ravine, but no such passage is afforded when the structure cannot be approached. Can a house be said to be finished until there are steps up to its doors, or stairs to its chambers? And how can a bridge be said to be completed without the proper means of access?''

The case law generally is to the effect that the approaches are a part of the bridge. There are several Iowa cases, and some from elsewhere to the effect that this is a question for the jury. After a review of these Iowa cases, in the note found in 20 L. R. A. supra, the writer draws the proper distinction in this language: ''So it is held in other cases to be a question for the

jury whether a so-called approach is part of a bridge. [Moreland v. Mitchell County, 40 Iowa 394; Nims v. Boone County, 66 Iowa 272.] But these decisions relate to cases in which the real question was chiefly one of fact as to what constitutes a part of the approaches rather than the question whether the approaches are a part of the bridge, which is the one involved in the main case. The cases are not really in conflict on this point.''

The plaintiff here urges that the question whether or not these approaches were a part of the bridge, was a matter for the jury, and relies upon these Iowa cases. These cases are not applicable to the one at bar. Here the plan of the bridge offered in evidence contemplates the construction of those approaches as a part thereof. They are to be constructed by one and the same party, i. e., the city of St. Louis. They are independent of the two highways, i. e., Eighteenth and Twentieth streets, for these highways are left intact, although narrowed. Here there is no dispute where the approach begins and the highway ends, as in the Iowa and other cases, where it is held to be a question for the jury. It is only in cases where there is a reasonable dispute where the highway ends and the approach, as a part of the bridge, begins, that it becomes a question for the jury.

We are satisfied that the approaches involved in this case are a part of this bridge and under the facts of the case can be so declared as a matter of law.

Having reached this conclusion we have before us a proposed bridge, to be constructed over three streets, viz., Eighteenth street, Clark avenue and Twentieth street. The original ordinance, which is the contract between plaintiff and defendants, was for a bridge on Clark avenue only. The proposed bridge is not within the purview of their contract, and defendants are in no way liable therefor. This was the view taken by the

trial judge, as evidenced by his remarks throughout the record. In this view he was correct. Other interesting questions discussed in the briefs are unnecessary for a determination of the case, and a discussion thereof will be omitted. From what has been said it follows that the judgment below was for the right party and it is affirmed.

*Woodson, J.*, concurs in this opinion and *Fox, J.*, concurs in paragraph one, but not in remainder of the opinion.